OPINION OF THE COURT
William Garnett, J.
Can an order of protection issued in another State serve as the predicate for a charge of criminal contempt under the Penal Law of the State of New York?
By a misdemeanor information, the defendant is charged with harassment in the first degree, Penal Law § 240.25, and criminal contempt in the second degree, a class A misdemeanor pursuant to Penal Law § 215.50 (3).
The information alleges that, in violation of an order of protection issued in the State of New Jersey, the defendant followed his daughter, Jessica Marshall-Hadley, from a train station, onto a train, into the rear car of the train, off the train and onto a street in Staten Island, New York.
The New Jersey decree, which is the predicate for the criminal contempt charge and which was submitted by the prosecution to corroborate the misdemeanor complaint, is a "final” restraining order issued pursuant to the New Jersey Prevention of Domestic Violence Act by a Judge of the Superior Court, Chancery Division, Family Part, Monmouth County, New Jersey, in favor of the complainant’s mother. This order was granted in an action entitled: "In the Matter of Dorothy Hadley, Plaintiff and Kevin Hadley, Defendant.”
The order was granted on February 16, 1995 and was bottomed on a judicial finding that the defendant, Kevin Hadley, *699 was, and is, a danger to the plaintiff’s life, health and well-being. The decree admonished the defendant that any violation of the substantive provisions of the order would result in a criminal prosecution and a possible jail sentence. Explicitly, the order recited that a violation "may constitute criminal contempt pursuant to N. J. S. A. 2C: 29-9(b).” The court’s order was filed with the County Clerk’s office in Monmouth County. The decree contains no time limit.
The applicable provisions of the New Jersey order preclude the defendant, Kevin Hadley, from "having * * * personal contact” with Jessica Marshall-Hadley, the complainant in this case. More specifically and pointedly, the order prohibits the defendant "from stalking, following [emphasis added] or threatening to harm, to stalk, to follow [emphasis added]” Jessica Marshall-Hadley.
The New Jersey order does not indicate, on its face, whether the defendant was afforded due process before the decree issued. Although the order is labeled "final”, certain matters of contention between the parties were "reserved for future determination”, e.g., "emergent monetary relief”, "victim monetary compensation”. Moreover, the plaintiff, the complainant’s mother, was granted alimony "pendente lite” indicating that all issues germane to the marriage dissolution had not yet been judicially determined at the time that this order was granted. In addition, the criminal complaint does not contain an allegation that the defendant was accorded due process in the New Jersey proceeding.
The final section of the New Jersey order is entitled "Return of Service”. Although the sentences which memorialize that the defendant was given a copy of the order by personal service were checked, this section was not completed by the inclusion of the signature, title and department or office of the person who made service and the date of service.
The defendant has, in essence, moved pursuant to CPL 170.30 (1) (a) and 170.35 (1) (b) to dismiss the second count of the information which charges him with criminal contempt in the second degree. The defense contends that the New Jersey restraining order, allegedly violated by the defendant’s behavior in New York, may only be criminally enforced in a court of the State of New Jersey for New Jersey has exclusive jurisdiction.
In response, the People aver that the New Jersey restraining order is enforceable in New York as the New Jersey order must be "enforced as if it were the order of the enforcing *700 State”. (18 USC § 2265 [a].) The prosecution argues that the cited Federal statute compels New York to give full faith and credit to the New Jersey decree.
The information alleges facts which, if true, constitute the crime of harassment in the first degree. Thus, the conduct imputed to the defendant in the information would constitute an egregious and plain violation of the New Jersey restraining order. If the order had emanated from a New York State court, there would be no question that the charge of criminal contempt in the second degree had been established prima facie.
May the State of New York enforce the New Jersey order by charging the defendant with criminal contempt in the second degree?
Article IV, § 1 of the Constitution of the United States of America provides that "Full Faith and Credit” shall be given to the "public Acts, Records, and judicial Proceedings” of the States. However, this constitutional provision is not self-executing. The Congress is enjoined to "prescribe the Manner” in which the acts of the States are to be proved and given effect. (US Const, art I, § 1.)
Congress employed the power bestowed upon it by this constitutional provision by enacting 18 USC § 2265. This section, enacted as part of the Violence Against Women Act of 1994, requires the States to give full faith and credit to "[a]ny protection order issued” by the court of any State. (18 USC § 2265 [a].)
Congress was concerned that if an abused woman crossed State lines she would lose the protection of an order issued in her former home State. Therefore, 18 USC § 2265 was modeled on existing law which had addressed child custody awards in parental kidnapping cases by invoking the full faith and credit section of the Constitution. (Sen Rep No. 197, 102d Cong, 1st Sess [Oct. 29, 1991].) Congresswoman Susan Molinari predicted that the enactment of this section with other provisions "could be sending an important message to women and their potential attackers.” (139 Cong Rec H8734-01, H8738 [Nov. 3, 1993].) Thus, it is abundantly clear that Congress intended State protective orders to have interstate consequences to protect women who cross State lines.
Yet, Congress did not indicate how the enforcing State was to give full faith and credit. May the sister State enforce the issuing State’s edict by dint of its Penal Law?
*701 In pertinent part, Penal Law § 215.50 (3) proscribes the "[i]ntentional disobedience or resistance to the lawful process or other mandate of a court”. The plain language of the statute is inclusive. The statute does not circumscribe the ambit of this prohibition to New York courts only. On its face, the penal statute can be fairly interpreted to sanction the intentional disobedience of the order of any court. Therefore, the applicable Penal Law provision does not foreclose the enforcement of an out-of-State court order.
Further, a court of this State would have jurisdiction of a charge of criminal contempt in the second degree bottomed on an allegation of a violation of an out-of-State order pursuant to CPL article 20.
Specifically, CPL 20.20 (1) (a) confers jurisdiction on the criminal courts of this State where conduct, occurring in this State, would constitute an element of a charged crime. In this case, the defendant’s alleged stalking of the complainant would be an element of criminal contempt in the second degree. In order to establish an "intentional disobedience” of the New Jersey State order, the People would have to establish, beyond a reasonable doubt, that the defendant committed acts in New York State which constituted a violation of the out-of-State protection order. Thus, the alleged conduct of the defendant in New York and in Richmond County establishes jurisdiction to try the defendant in New York State. (See also, CPL 20.40 [1] [a].)
In order to accord an out-of-State protection order full faith and credit in the enforcing State, the party seeking to enforce the order must establish that the defendant was afforded due process before the order issued. A defendant must be given reasonable notice and opportunity to be heard sufficient to protect that person’s right to due process. (18 USC § 2265 [b] [2].) Thus, if the out-of-State protection order is to be given full faith and credit, the party seeking enforcement must demonstrate that the person against whom the order was issued was given a reasonable opportunity to be heard in conformity with the law of the issuing State and consistent with due process.
Moreover, in order to establish prima facie a violation of an order of protection, the prosecution must show that the defendant has been told "either orally or in writing, the contents of the order and the conduct it prohibits”. (People v McCowan, 85 NY2d 985, 987 [1995].) Therefore, the information must contain facts which indicate that the defendant was apprised by proper service of the contents of the order.
*702 Can the order which was issued principally in favor of the defendant’s estranged wife be enforced to protect the children mentioned as protected persons in the order?
Is the provision which makes the primary recipient’s rights enforceable in another State also applicable so as to give the children of the spouse the benefit of the full faith and credit mandate of the Federal statute?
The answers to these questions lie in an examination of the statutory language of the applicable New Jersey statute and a Federal statute.
The governing New Jersey statute is New Jersey Statutes Annotated § 2C:25-29. This section sets out the parameters of a restraining order issued by the Family Part of the Chancery Division of the Superior Court. A restraining order may preclude a defendant "from entering the residence, property, school, or place of employment of the victim or of other family or household members of the victim” or mandate that "the defendant * * * stay away from any specified place that is named in the order and is frequented regularly by the victim or other family or household members.” (NJ Stat Annot § 2C:25-29 [b] [6].) Further, the court may prohibit the defendant from making contact by any means with the victim or other family members which would likely cause annoyance or alarm. (NJ Stat Annot § 2C:25-29 [b] [7].) Finally, the Superior Court may also enjoin the defendant from "stalking or following, or threatening to harm, to stalk or to follow, the complainant or any other person named in the order”. (NJ Stat Annot § 2C:25-29 [b] [17].) Thus, the issuing court has plain statutory authority to issue a restraining order which encompasses and protects persons other than the complainant.
The applicable Federal statute is 18 USC § 2266. This statute defines "protection order” for the purpose of the full faith and credit requirement contained in 18 USC § 2265. A "protection order” includes "any injunction or other order issued for the purpose of preventing violent or threatening acts or harassment against, or contact or communication with or physical proximity to, another person”. (18 USC § 2266 [emphasis added].) This expansive definition indicates that the ambit of the full faith and credit mandate was to include orders issued to others and was not intended to exclusively cover a spouse or intimate partner.
The phrase "a spouse or intimate partner” is used in 18 USC § 2265 (c) and in 18 USC § 2266. This phrase is used in section *703 2265 (c) in describing what orders would not be accorded full faith and credit. Section 2266 defines the phrase for the statutory provisions beginning with 18 USC § 2261 and following. Sections 2261 through 2264 deal with various aspects of a new Federal crime created by those statutory provisions. If Congress had simply wished to limit the impact of the full faith and credit provision to orders issued in favor of that class of individuals subsumed within the definition of "a spouse or intimate partner” that phrase could have been incorporated into the definition of "protection order”.
In fact, earlier versions of the proposed definition included a phrase similar to "a spouse or intimate partner”. These bills included the phrase: "his or her spouse or intimate partner”. (Sen Rep No. 545, 101st Cong, 2d Sess, at 55 [Oct. 19, 1990]; Sen Rep No. 138, 103d Cong, 1st Sess, at 228 [Sept. 10, 1993].) Ultimately, the present language was included in a bill pending in the Second Session of the 103rd Congress. (HR Conf Rep 711, 103d Cong, 2d Sess, at 345 [Aug. 21, 1994].) The phrase "spouse or intimate partner” is narrowly defined to include "a spouse, a former spouse, a person who shares a child in common with the abuser, and a person who cohabits or has cohabited with the abuser as a spouse” and "any other person similarly situated to a spouse”. (18 USC § 2266 [A], [B].)
If the intent of the Congress had been to circumscribe the applicability of the full faith and credit provision to orders in favor of a spouse or intimate partner only, then the original phrase, i.e., "spouse or intimate partner” could have been inserted in the definition of a protection order. Perhaps, arguably, the final definition was designed to encompass individuals in same sex relationships. Clearly, however, the words "intimate partner” would include a person involved in a same sex relationship. The definition of the phrase "spouse or intimate partner” includes persons who are "similarly situated to a spouse” as governed by the applicable laws of the State in which the injury occurred or where the victim resides. (18 USC § 2266 [B].) This definition would include intimate partners in a same sex relationship and thus obviate the possibility that the language used in the definition of "protection order” was designed to address this situation.
Patently, the language included in the definition of a protective order, i.e., "another person”, is more inclusive than the phrase "spouse or intimate partner”. Apparently, and presumably, Congress made a rational choice to use the more expansive phrase to accord more persons who have been *704 protected by State orders of protection the benefit of the full faith and credit provision in 18 USC § 2265. There is no legislative history which reveals why the less restrictive phrase was substituted. However, it is not an unreasonable interpretation to conclude that Congress decided that the full faith and credit mandate should be extended to include those other members of the victim’s household who have been afforded the protection of a State court order in a domestic violence case.
Thus, in summary, the plain language of the definition of "protection order” coupled with the intentional deletion of a less inclusive phrase by Congress leads to the ineluctable conclusion that Congress intended to extend the full faith and credit provision to all persons, named as protected persons, in a State protection order. If the intent had been otherwise, then the original phrase would not have been struck from the definition of a protection order contained in earlier versions of the bill.
Public Policy
The public policy of this State would not be offended by the enforcement of an out-of-State protection order in favor of a member of the victim’s household. CPL 530.12 permits, in cases involving family offenses, a court to issue an order of protection in favor of the victim and any family or household member. Moreover, the New York State Legislature has manifested grave concerns about violations of orders of protection as it has increased the penalties for some violations of such orders by designating such violations as felonies, e.g., Penal Law § 215.51 (b); § 215.52. Thus, the Federal law and the law of the State of New Jersey are not inconsistent with or repugnant to the policy underlying similar provisions of New York law.
Conclusion
On its face, 18 USC § 2265 requires the State of New York, pursuant to the constitutional provision for full faith and credit, to enforce the restraining order issued by the Superior Court of New Jersey. The New Jersey order is thus an order which can be given effect in the courts of New York State.
In this case, the District Attorney, invoking his discretion, has charged the defendant with a crime under the Penal Law bottomed on the defendant’s alleged violation of the New Jersey order. The District Attorney was not compelled to bring *705 this charge and thus the United States Congress has not mandated the action of the prosecutor. The applicable Penal Law section does not limit its applicability to New York court orders only. The statute merely proscribes an intentional disobedience of a "lawful * * * mandate” of a court — not just a New York court. (Penal Law § 215.50 [3].)
While, obviously, the prosecution could not bring a charge of criminal contempt in the second degree if the acts constituting the alleged crime had been committed solely in New Jersey in violation of the New Jersey order, the prosecution, in this case, has the requisite jurisdictional predicate to bring a criminal charge in New York State. The alleged acts of the defendant, an element of the crime charged, occurred in the State of New York. Thus, the District Attorney and this court have jurisdiction over the offense.
The Federal statute which authorizes the enforcement of the New Jersey order in New York requires that the party against whom the mandate was issued be accorded due process. There is nothing in the language of the misdemeanor complaint or the accompanying New Jersey restraining order which establishes prima facie that the defendant was afforded due process before the order was granted. In the absence of facts that the defendant was given a reasonable opportunity to be heard, the State of New York through this court cannot extend full faith and credit to the New Jersey decree.
In addition, in order to satisfy due process and the law of the State of New York, the prosecution must also demonstrate that the defendant was given notice of the contents of the restraining order by proper service. Although the restraining order attached to the complaint is marked as indicating that service was effected, the entire section establishing proper notice was not completed. Again, the contents of the complaint and the accompanying New Jersey order do not contain sufficient facts, if true, to establish that the defendant was cognizant of the provisions of the order after proper service.
An analysis of the applicable New Jersey statute demonstrates that the court had the authority to issue an order to protect members of the victim’s family including her daughter, the complainant in this case. Moreover, the definition of "protection order” contained in 18 USC § 2266 permits enforcement of an order issued to protect "another person” in a domestic violence case. Enforcement is not limited to those individuals who fit within the definition of "a spouse or intimate partner”.
*706 Finally, the enforcement of this out-of-State order would not violate the public policy of this State. By statute, the State of New York has granted protection to the victims of domestic violence and members of their families. The State has also manifested a determination to seriously sanction violations of orders of protections by designating certain violations as felonies.
In summary, if the prosecution had established, prima facie, that the defendant had been afforded due process and had been given notice of the contents of the order by sufficient service, then the contents of the complaint in combination with the New Jersey restraining order attached would have provided sufficient facts to support the charge of criminal contempt in the second degree.
Thus, the defendant’s motion to dismiss is granted with leave to the prosecution to submit a superseding information within the applicable speedy trial period.*

 Subsequently, the prosecution required an affidavit from a New Jersey court official which established that the defendant had been afforded due process in New Jersey. Further, a superseding information established that the defendant had been served with the New Jersey decree.