Dear Honorable Marna McLendon
You have requested an opinion regarding the criminal enforcement of out-of-state protective orders in domestic violence cases. Your inquiry requires an interpretation of a State statute that mandates enforcement of out-of-state orders and authorizes Maryland law enforcement officers to arrest a person who has violated an out-of-state order that is properly authenticated.
You pose a series of questions, which we summarize as follows. First, you ask whether it is a "crime for a person to violate an out-of-state protective order with conduct within the State of Maryland" and how a person arrested for violation of an out-of-state protective order should be charged. Second, you ask what guidance should be given to law enforcement officers who may be presented with copies of out-of-state protective orders and how such copies may be authenticated.
We conclude that Maryland law provides for criminal enforcement of out-of-state protective orders to the same extent as it provides for criminal enforcement of protective orders issued by Maryland courts. Thus, if the procedural requirements of the State Domestic Violence Law are satisfied, an individual who violates an out-of-state protective order in Maryland may be arrested and prosecuted criminally under Maryland law, when a similar violation of a Maryland protective order would be a criminal offense.
When a law enforcement officer is presented with a copy of an out-of-state protective order and a request for criminal enforcement of the order, the officer should first determine from the face of the order the identity of the respondent and whether the order remains effective by its terms. The officer should assess whether there is probable cause to believe that the respondent has violated the order and, if so, whether a similar violation of a Maryland protective order could furnish the basis for a criminal prosecution. Before making an arrest, the officer should also make a preliminary determination as to whether the copy of the order is authenticated under federal law or the law of the state in which it was issued.
Under federal law, a copy of an order is properly authenticated if it contains or is accompanied by an attestation of the clerk of the issuing court, the seal of the court (if one exists), and a certification by the court. The law of the state in which the order was issued may also permit other forms of authentication.
 I Background
Your questions involve the interplay of the State Domestic Violence Law and a federal statute that implements the full faith and credit clause of the United States Constitution with respect to domestic violence orders issued by state courts. A brief outline and discussion of those two statutes frames the answers to your questions.
A. Maryland Domestic Violence Law
In 1980, the Maryland General Assembly enacted the State Domestic Violence Law. Chapter 887, Laws of Maryland 1980, nowcodified at Annotated Code of Maryland, Family Law Article ("FL"), §§ 4-501 through 4-516. Passed in response to growing concern about domestic abuse, the statute was designed to "protect and aid victims of domestic abuse by providing an immediate and effective remedy." Coburn v. Coburn, 342 Md. 244, 252, 674 A.2d 971 (1996). The statute established new judicial remedies to combat domestic violence, as well as a statewide program to provide shelter, counseling, and rehabilitation services to victims of abuse. The primary purpose of the statute was to prevent further harm to victims of abuse, rather than to punish offenders. Id.
In its current form, the State Domestic Violence Law permits a victim of abuse to invoke judicial remedies by filing a petition with the District Court or a circuit court. Upon finding reasonable grounds to believe that abuse has occurred, a judge may issue a temporary ex parte order directing the alleged abuser to refrain from further abuse and other contact with the victim, to stay away from the home and workplace of the victim, or to vacate a shared residence. The ex parte order may also award temporary custody of any children of the parties. FL, § 4-505. After an opportunity for an adversary hearing on the allegations in the petition, if the court finds clear and convincing evidence that abuse has occurred, the court may issue a final protective order extending the terms of the ex parte order and granting additional relief, such as an award of emergency family maintenance, an award of temporary use of a jointly owned vehicle, visitation rights with respect to children, and a requirement that the respondent participate in a counseling program. FL, § 4-506. A respondent who violates a temporary ex parte order or a protective order may be found in contempt or prosecuted criminally, depending on the nature of the violation. FL, § 4-508, 4-509.
Many other states have enacted similar legislation. See,e.g., P. Finn S. Colson, Civil Protection Orders: Legislation,Current Court Practice, and Enforcement (Nat'l. Inst. of Justice 1990) appendix (listing protection order statutes by state).
B. Federal Violence Against Women Act
Although the states had established protective order procedures and similar remedies to combat domestic violence, a concern persisted that a victim of abuse who left the state in which a protective order was issued would lose the benefit of the order and would need to seek a new order in another jurisdiction.See Klein, Full Faith and Credit: Interstate Enforcement ofProtection Orders Under the Violence Against Women Act of 1994, 29 Fam. L. Q. 253, 255 (1995). In 1994, Congress responded by including "full faith and credit" provisions in the federal Violence Against Women Act ("VAWA"). The stated purpose of those provisions was to "[close] a major loophole by requiring that each State honor the protective orders issued by other States." S. Rep. No. 103-138 (1993) at 43-44.
VAWA was part of the Violent Crime Control and Law Enforcement Act of 1994. Pub.L. No. 103-322, Title IV,108 Stat. 1796, 1902-55. Among other things,[1] VAWA added a new chapter to the federal criminal code designed to deter domestic violence and to promote enforcement of state "protection orders" across state lines. 18 U.S.C. § 2261 et seq. VAWA defined "protection order" to include "any injunction or other order issued for the purpose of preventing violent or threatening acts [of domestic abuse,] including temporary and final orders issued by civil and criminal courts. . . ." 18 U.S.C. § 2266. The term "protection order" thus encompasses both temporary ex parte orders and protective orders under the Maryland statute.
VAWA created new federal crimes of interstate domestic violence and interstate violation of a protection order and required that a special order of restitution be imposed against anyone convicted of either of those offenses. 18 U.S.C. § 2261,2262, 2264. In addition, Congress exercised its power under the full faith and credit clause of the United States Constitution[2] to direct that a protection order issued by a court of one state "be accorded full faith and credit by the court of another State . . . and enforced as if it were the order of the enforcing State. . . ."[3] 18 U.S.C. § 2265(a). This mandate is conditioned on the premises that the issuing court had both personal and subject matter jurisdiction and that the respondent had notice and an opportunity to be heard with respect to the order.[4] VAWA does not purport to export enforcement measures across state lines.[5] For example, a violation of a Pennsylvania protective order would be enforced in Maryland using Maryland, not Pennsylvania, remedies. See Klein supra, at 257.
The full faith and credit provisions of VAWA are a rare instance in which Congress has exercised its constitutional power under the full faith and credit clause to "by general Laws prescribe the Manner in which [out-of-state judicial] Proceedings shall be proved, and the Effect thereof." U.S. Constitution, Article IV, § 1. There is virtually no case law defining the limits on Congress' power to legislate under this clause, perhaps because Congress has seldom ventured into the area. See R. Rotunda J. Novak, Treatise on Constitutional Law § 12.7 at p. 243 n. 3 (3d ed. 1999) ("There has not been a great deal of federal statutory law in this area."). The substantial body of case law, as well as scholarly exposition, construing the constitutional mandate generally concerns the preclusive effect that a court must accord a civil judgment rendered by a court of another state. See
Reynolds, The Iron Law of Full Faith and Credit, 57 Md. L.Rev. 412 (1994).
Domestic violence orders present an unusual context for the application of the full faith and credit clause. While domestic violence cases are civil in nature, protective and ex parte orders are frequently enforced by criminal remedies. For example, in Maryland, a respondent who fails to abide by a stay-away provision in an ex parte or protective order may be arrested for a criminal violation of FL, § 4-509.[6] Thus, VAWA's prescription for interstate enforcement of domestic violence orders does not simply provide a rule for the preclusive effect of foreign litigation; it also directs employment of a State's criminal enforcement resources in aid of a foreign judgment.[7]
.C. Provision for Enforcement of Out-of-State Domestic Violence Orders in Maryland
 1. Enforcement of Foreign Orders Prior to 1996
When VAWA was enacted, Maryland did not have procedures specific to the enforcement of foreign protective orders. At that time, a domestic violence order issued under another state's law would presumably have been treated like any other foreign judgment. Under Maryland's version of the Uniform Enforcement of Foreign Judgments Act ("Uniform Act"), a "foreign judgment" is "a judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this State." Annotated Code of Maryland, Courts and Judicial Proceedings Article ("CJ"), § 11-801. Under that statute, a judgment issued by a court of another state is accorded full faith and credit once an authenticated copy is filed with the appropriate court in Maryland. CJ, § 11-802(a)(1). Once a foreign judgment is filed, it is given the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed. CJ, § 11-802(b).
The Uniform Act, which was designed chiefly to enforce monetary awards, presented a number of problems with respect to enforcement of a domestic violence order. For example, the statute directs that, when a foreign judgment is filed in a Maryland court, the clerk is to mail the defendant a notice of the filing, which must include, among other things, the address of the plaintiff. CJ, § 11-803. Thus, under the existing rules for enforcing foreign judgments, an effort to enforce a foreign domestic violence order in Maryland could be self-defeating, as it would notify an assailant of the victim's whereabouts. SeeKlein, supra, at 258. Moreover, the Uniform Act provided no guidance or direction to law enforcement officers about their authority to make an arrests for violations of out-of-state orders.
Noting the use of criminal remedies to enforce domestic violence orders and VAWA's mandate to the states to enforce foreign orders, this Office, in a 1995 advice letter, questioned the constitutionality of VAWA's full faith and credit provisions in light of the Tenth Amendment's reservation of police powers to the states. See Letter from Assistant Attorney General Kimberly Smith Ward to Shari Heise, Victim-Witness Specialist, United States Attorney's Office (August 7, 1995) (congressional mandate that a state devote its law enforcement resources to enforce an out-of-state order may violate the Tenth Amendment);[8] seealso Printz v. United States, 521 U.S. 898 (1997) (declaring unconstitutional a portion of Brady bill that required state law enforcement officers to enforce federal gun law). The advice letter recommended that, to avoid the constitutional issue, the State enact legislation to provide specifically for the enforcement of out-of-state domestic violence orders.
 2. 1996 Legislation
In 1996, legislation was introduced in the General Assembly to address the enforcement of out-of-state domestic violence orders. House Bill 334. As originally introduced, House Bill 334 largely mimicked the language of VAWA. In particular, the original version of the bill repeated virtually verbatim the definition of "protection order" in 18 U.S.C. § 2266, and tracked the full faith and credit provisions of 18 U.S.C. § 2265. The only language in the original bill not taken directly from the federal statute was a subsection authorizing law enforcement officers to arrest a person who violated a currently effective protection order from another state. That language, if it had been enacted as proposed, would have applied to any out-of-state domestic violence order and would have had the anomalous effect of authorizing more expansive criminal enforcement of out-of-state orders than of orders issued by Maryland courts.[9]
Prior to passage of the bill, the Legislature amended it to substitute the term "protective order" for "protection order," to delete much of the language that simply repeated the full faith and credit provisions of VAWA, to define more specifically the circumstances under which an order could be "enforced" or an arrest could be made, and to direct the entry of out-of-state orders in a statewide law enforcement database. Chapter 615, Laws of Maryland 1996. The enforcement provisions were part of a new section of the State Domestic Violence Law, FL, § 4-508.1, which reads:
 (a) A protective order issued by a court of another state or an Indian tribe shall be accorded full faith and credit by a court of this State and shall be enforced only to the extent that the order affords relief that is permitted under § 4-506(d) of this subtitle.
 (b) A law enforcement officer shall arrest with or without warrant and take into custody a person whom the officer has probable cause to believe is in violation of a protective order that was issued by a court of another state or an Indian tribe and is in effect at the time of the violation if the person seeking the assistance of the law enforcement officer:
 (1) has filed with the District Court or circuit court for the jurisdiction in which the person seeks assistance a copy of the order that is authenticated in accordance with an act of Congress or statute of the issuing state; or
 (2) displays or presents to the law enforcement officer a copy of the order that is authenticated in accordance with an act of Congress or statute of the issuing state.
FL, § 4-508.1. Thus, Chapter 615 amended the State Domestic Violence Law to provide that an out-of-state protective order should be accorded full faith and credit by Maryland courts and should be "enforced only to the extent" that the order affords relief permitted by Maryland law. Further, it authorized law enforcement officers to arrest individuals who violate out-of-state protective orders, so long as those orders are properly authenticated.
Finally, Chapter 615 provided for the entry and updating of information concerning the status of out-of-state protective orders in the Maryland Interagency Law Enforcement System (MILES).See Annotated Code of Maryland, Article 88B, § 7A(a)(3)(iii). As a result, judges and law enforcement officers can determine the status of protective orders, including out-of-state orders that are filed with Maryland courts, by accessing MILES.
 3. Parameters for Criminal Enforcement of Domestic Violence Orders
VAWA requires that an out-of-state domestic violence order be enforced as if it were an order of the forum state. Some states, as well as some commentators, have interpreted this mandate to require enforcement of an order even if it grants relief that would not be available under the law of the enforcing state. See
S.C. Code Ann. § 20-4-140(A) (out-of-state protection order is to be "enforced as if it were issued in this State even if the relief granted to the petitioner in the foreign order would not be available under the laws of this State."); W.Va. Code, § 48-2A-3(e)(out-of-state order "shall be . . . enforced as if it were an order of this state whether or not such relief is available in this state."); Klein, supra, at 258. By contrast, FL, § 4-508.1(a) requires enforcement of an out-of-state order "only to the extent" that the out-of-state order affords relief that could be awarded in a Maryland protective order.
The limitation on enforcement stated in FL, § 4-508.1(a) may seem at odds with the full faith and credit section of VAWA. However, in many instances, the courts distinguish recognition of a foreign judgment from enforcement of the judgment. See MikeSmith Pontiac, GMC Inc. v. Mercedes-Benz of North America, Inc.,356 Md. 542, 741 A.2d 462 (1999); Guinness PLC v. Ward,955 F.2d 875, 889 n. 9 (4th Cir. 1992) (whether court should recognize foreign decree and whether it should use equitable remedies to enforce decree are "two separate and distinct lines of inquiry").See also Baker v. General Motors Corp., 118 S. Ct. 657, 664 (1998)
The Maryland statute can be reconciled with VAWA if FL, § 4-508.1(a) is construed to define the circumstances under which the State will devote its resources to the criminal enforcement of out-of-state protection orders. Although FL, § 4-508.1(a) refers generally to enforcement, the focus of the Legislature on criminal enforcement[10] and the authorization to make arrests set forth in FL, § 4-508.1(b) suggests that FL, § 4-508.1 is intended primarily to define the scope of the State's criminal enforcement of out-of-state orders. Viewed from that perspective, FL, § 4-508.1(a) is not at odds with the federal statute. Rather, it simply indicates that the availability of criminal enforcement for out-of-state orders parallels criminal enforcement of Maryland protective orders. In that respect, FL, § 4-508.1(a) is entirely consistent with the federal mandate to enforce an out-of-state order as if it had been issued by a Maryland court.
Thus, although a Maryland court is required by federal law to accord full faith and credit (i.e., preclusive effect) to an out-of-state domestic violence order even if the order contains relief that could not be awarded in an order under Maryland law, the General Assembly has limited criminal enforcement of foreign orders to those provisions for which criminal enforcement would also be available with respect to a Maryland order.
 4. Foreign Ex Parte Orders
The federal statute mandates that states accord full faith and credit to an out-of-state "protection order" — a term defined to include not only orders issued after the opportunity for a hearing ("protective orders" in the Maryland parlance) but also temporary orders obtained on an ex parte basis that meet minimal standards of due process.[11] However, FL, § 4-508.1 speaks only to the enforcement of an out-of-state "protective order." The State statute does not define the term "protective order" generally or specifically with reference to other states. That term does not necessarily appear, or have a common meaning, in all state domestic violence statutes.[12] Nor is there a uniform domestic violence law that offers a general definition of the term. However, in describing the forms of relief that may appear in an out-of-state protective order, FL, § 4-508.1(a) also references the section of the Maryland statute that sets forth the contents and procedures for issuance of a "protective order" under Maryland law (FL, § 4-506). Thus, FL, § 4-508.1 might reasonably be interpreted to address only the enforcement of foreign domestic violence orders issued after an opportunity for an adversarial hearing and not the enforcement of out-of-state ex parte orders.
This limitation of FL, § 4-508.1, however, appears to be more likely the unintended consequence of a stylistic drafting change than of a legislative intent to limit enforcement of domestic violence orders. While House Bill 334 was being considered in the House of Delegates, it was amended throughout to replace the original term "protection order" — a defined term derived from VAWA, but which does not otherwise appear in the Maryland Domestic Violence Law — with "protective order" — an undefined, but seemingly similar, term employed in the Maryland Domestic Violence Law since its original enactment in 1980.
There is no explicit statement in the legislative file to explain this substitution. It appears simply to have been an effort to replace unfamiliar federal nomenclature with a similar and more familiar term from the Maryland Domestic Violence Law. In an early draft of the bill, the term "protection" is circled, with a nearby handwritten marginal note containing the word "protective" underlined. The first draft of the amendment making the substitution of terms was offered by the lead sponsor of the original bill. There is no indication in the legislative file of any opposition to the enforcement of out-of-state ex parte orders. Nor is there any indication in the legislative record that the General Assembly intended to limit enforcement of foreign ex parte
orders in Maryland or to challenge Congress' power under the full faith and credit clause to mandate such enforcement. Rather, the consistent view expressed by the supporters of the bill and in the analyses prepared by the legislative staff was that the bill "seeks that, as a matter of public policy and for the purpose of carrying out [VAWA], police in the State be required to enforce, when necessary, out-of-state protection orders." Senate Floor Report for House Bill 334. An apparent effort to avoid confusion by eliminating a new term inadvertently truncated the scope of the statute.
Thus, we believe that the Legislature intended, consistent with VAWA, that an out-of-state ex parte order be enforced criminally in Maryland to the same extent as a Maryland ex parte
order. However, a criminal prosecution based on a foreign exparte order alone may be subject to legal challenge based on the fact that FL, § 4-508.1(a) applies by its terms to "protective orders." Courts typically construe penal and criminal statutes narrowly in favor of the accused. See, e.g., Belman v. State,322 Md. 207, 213, 586 A.2d 1281 (1991); Singer, Sutherland StatutoryConstruction § 59.03 (5th ed. 1992) (noting the "ancient rule of statutory construction that penal statutes should be strictly construed against the government"). A court presiding over such a prosecution may be disposed to read FL, § 4-508.1 and FL, § 4-509 literally and construe them to reach only out-of-state orders issued after opportunity for an adversary hearing.
Because ex parte orders must be short in duration to satisfy due process, in most instances an out-of-state ex parte order will have expired or ripened into a protective order before enforcement is sought in Maryland. Nonetheless, given the frequency with which individuals commute across state lines for work or other purposes, there will inevitably be a need to invoke criminal remedies to enforce an ex parte order from a neighboring state. We recommend that, to fulfill its expressed intent to afford full faith and credit to out-of-state domestic violence orders in accordance with VAWA, the General Assembly eliminate any confusion over the criminal enforcement of domestic violence orders in Maryland and amend FL, § 4-508.1 to include out-of-state ex parte
orders that satisfy the due process standards set forth in VAWA.[13]
 II Criminal Enforcement of Out-Of-State Protective Orders
You have inquired about the basis for criminal enforcement in Maryland of out-of-state protective orders. You note an apparent anomaly in the State Domestic Violence Law. While the law authorizes law enforcement officers to arrest respondents who violate out-of-state protective orders, it does not identify the crime for which the arrest is authorized. FL, § 4-508.1(b). On the other hand, while the section of the Domestic Violence Law dealing with criminal penalties specifies with particularity the types of violations of a Maryland protective order that constitute criminal offenses, it makes no reference to out-of-state orders. FL, § 4-509(a).
Based on those observations, you pose two questions: (1) Is it a crime for a person to violate an out-of-state protective order by conduct that occurs within Maryland? (2) For what offense may an individual be arrested under FL, § 4-508.1(b)?
A. Violation of Out-of-State Order by Conduct in Maryland
A respondent who violates an out-of-state protective order by conduct in Maryland may have committed a criminal offense under the law of the issuing state, as well as a federal offense under VAWA — i.e., interstate violation of a protection order, 18 U.S.C. § 2262. Furthermore, it is manifest from FL, § 4-508.1 and its legislative history that such conduct may also be a criminal offense under Maryland law.
Under FL, § 4-508.1(a), an out-of-state protective order is enforceable in Maryland to the extent that it grants relief that could be granted in a protective order under Maryland law. FL, § 4-508.1 was designed to ensure that a protective order "issued by a court in another state . . . [will] . . . be enforced as if it were issued in this State." Senate Floor Report for House Bill 334 (1996). The potential criminal violations of a Maryland protective order are set forth in FL, § 4-509(a). Thus, violation of an out-of-state protective order is a criminal offense under FL, § 4-509(a) to the extent that a similar violation of a Maryland order would be a criminal offense.
Under FL, § 4-509(a), a person may be charged with a misdemeanor[14] for failure to comply with relief granted in a temporary ex parte order under FL, § 4-505(a)(2)(i)-(v) or in a protective order under FL, § 4-506(d)(1)-(5). In general, those provisions authorize a court to require the respondent to refrain from abuse, from other contacts with the petitioner, and from visits to the residence or workplace of the petitioner.[15] A violation, by conduct in Maryland,[16] of a provision of an out-of-state order that provided similar relief would thus also be a criminal offense under Maryland law.
B. Basis for Arrest under FL, § 4-508.1(b)
FL, § 4-508.1(b) does not itself state the offense for which an arrest may be made. As noted above, the statute authorizes the arrest and criminal prosecution of a respondent who violates a term of an out-of-state order providing for the type of relief permitted under FL, § 4-506(d)(1)-(5). Thus, once a copy of the out-of-state order is properly authenticated and either filed in court or presented to a law enforcement officer, if there is probable cause to believe that the respondent has violated relevant terms of the order in Maryland, a Maryland law enforcement officer may arrest the respondent for a misdemeanor under FL, § 4-509(a). Because FL, § 4-508.1(a) directs that an out-of-state protective order be enforced in Maryland only to the extent that it affords relief that could be granted in a Maryland protective order, the arrest authority granted in FL, § 4-508.1(b) extends only to violations that would be criminal offenses if the underlying order had been issued under Maryland law.
C. Summary
In sum, a respondent may be arrested under FL, § 4-508.1(b) for a criminal violation of FL, § 4-509(a) if, by conduct in Maryland, the respondent violates a term of an out-of-state protective order and violation of a similar term in a Maryland order would be a criminal offense under FL, § 4-509(a). For example, if a Virginia protective order mandates that the respondent not enter the residence of the petitioner, the petitioner moves to Maryland, and the respondent enters the petitioner's Maryland residence, the respondent may be arrested under FL, § 4-508.1 and prosecuted under FL, § 4-509, because a Maryland protective order could contain a similar term and violation of that term would constitute a criminal offense. See FL, § 4-506(d)(3), 4-509(a). Likewise, if a Virginia order forbids the respondent from visiting the workplace of the petitioner and the respondent goes to the petitioner's place of employment in Maryland, a Maryland law enforcement officer may arrest the respondent. See FL, § 4-506(d)(5), 4-509(a).
On the other hand, if a Virginia order awards temporary use and possession of the family car to the petitioner and the respondent fails to abide by that portion of the order, FL, § 4-508.1(b) would not authorize the arrest and criminal prosecution of the respondent, because violation of a similar term in a Maryland order would not constitute a criminal offense.[17] Thus, an individual may be arrested and criminally prosecuted under Maryland law for violating an out-of-state protective order, but only to the extent that the violation implicates the sort of relief that could be granted under FL, § 4-506(d)(1)-(5).
Finally, it should be noted that a respondent who violates an out-of-state protective order may also commit other crimes under Maryland law, independent of the State Domestic Violence Law, by the same conduct. For example, a respondent who assaulted a person in violation of an out-of-state protective order could be arrested and charged with the separate crime of assault. Cf.People v. Hadley, 658 N.Y.S.2d 814 (N.Y. City Crim. Ct. 1997) (New York could enforce a New Jersey protective order by charging defendant under New York penal law provision governing intentional disobedience or resistance to lawful process or other mandate of court).
 III Authentication of Out-of-State Protective Orders
A. Officer's Review of Copy of Order
Finally, you request guidance for law enforcement officers and others who seek to authenticate out-of-state protective orders for purposes of enforcement under FL, § 4-508.1. We first note that an officer presented with an out-of-state protective order cannot be expected to make a conclusive determination whether the order is properly authenticated. Nor can an officer be expected to determine whether the order was issued in compliance with the due process requirements of 18 U.S.C. § 2265 — i.e., whether the issuing court had personal and subject matter jurisdiction and whether the respondent had an opportunity to be heard on the terms of the order. Only a court can make such determinations.[18]
Rather, the officer's task is to make a good faith evaluation of the authenticity and applicability of the order, and to determine whether there is probable cause to believe that the respondent has violated its terms.
When a law enforcement officer is presented with an out-of-state protective order for enforcement in Maryland, the officer should first verify that the person against whom enforcement is sought is named as a respondent in the order and should also confirm that the protective order remains effective by its own terms. The officer should then determine whether the order has been filed with a Maryland court. If the officer cannot determine that the order has been filed, the officer should determine whether the copy appears to be properly authenticated. Finally, the officer should determine whether there is probable cause to believe that the respondent has violated the terms of the order.[19]
B. Methods of Authentication
FL, § 4-508.1 references two alternative methods of authentication — federal law and the law of the state in which the order was issued. The remainder of this section discusses authentication of judicial orders under federal law and briefly describes authentication requirements in other states, particularly with reference to those states in geographical proximity to Maryland that are most likely to be the origin of out-of-state protective orders enforced in Maryland courts.
 1. Authentication under Act of Congress
Congress has provided a uniform standard for introducing records of judicial proceedings from one state into evidence in another state. That provision, sometimes referred to as the Federal Res Judicata Act or the Full Faith and Credit Statute, reads, in pertinent part:
 The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
28 U.S.C. § 1738. See Baker v. General Motors Corp.,118 S. Ct. 657, 663 n. 4 (1998); 18 C. Wright, et al., Federal Practice andProcedure § 4467 at pp. 626-27. Under the federal statute, a copy of a protective order is authenticated if it contains: 1) an attestation by the clerk of the issuing court; 2) the seal of the court, if a seal exists; and 3) a certificate of a judge of that court that the attestation is in proper form. An out-of-state protective order that meets those federal criteria is properly authenticated for purposes of FL, § 4-508.1(b).
 2. State Authentication Requirements
A limited survey of the authentication statutes and rules adopted by other states uncovered none in which a state purported to direct how its own court documents should be authenticated in another jurisdiction such as Maryland. Rather, the statutes generally specify how in-state court records and, in some cases, out-of-state court records may be authenticated in that state. Presumably, the option in FL, § 4-508.1 to authenticate an out-of-state order under the law of the issuing state was included because a victim of abuse requesting an authenticated copy of a protective order at the time the order was issued in another state would likely receive one authenticated under the standards of the issuing state.
Some authentication standards appear in statutes, some in rules of civil procedure, and some in rules of evidence. Most of the authentication standards adopted by the states are similar to federal standards, although state standards may be less demanding than federal standards. See, e.g., Donald v. Jones, 445 F.2d 601,606 (5th Cir.), cert. denied, 404 U.S. 992 (1971) (out-of-state record of conviction admissible, even if it does not meet standards of 28 U.S.C. § 1738, if document conforms to authentication standards of state where trial is held); Price v.Price, 447 N.E.2d 769, 772 (Ohio App. 1982) (methods of proof of authenticity provided by acts of Congress are not exclusive of other methods that states may adopt for their own courts). In general, all of these authentication standards are designed to assure that proffered evidence of a court record is genuine —i.e., that it is what it purports to be. The chief differences are that some states permit authentication simply with certification by the official having custody of the record (i.e., the court clerk) without the need for attestation by a judge, and some dispense with the requirement of a seal.
Some states specifically address the authentication of out-of-state court records by a statute that simply reiterates the conditions of 28 U.S.C. § 1738. See, e.g., W. Va. Code § 57-1-12. Other statutes permit authentication of in-state court records by means of certification by a court clerk, without attestation by a judge. For example, a Virginia statute provides that "records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified by the clerk of the court where preserved to be a true record." Va. Code Ann. § 8.01-389. Thus, in order for a copy of a Virginia protective order to be authenticated under that statute, it must be accompanied by a statement by the court clerk certifying that it is a true copy of the order. See Owens v.Commonwealth, 391 S.E.2d 605 (Va.App. 1990) ("authenticate" and "certify" are synonymous); Taylor v. Commonwealth, 489 S.E.2d 250
(Va.App. 1997) (written attestation by clerk that document is certified copy of a court record is sufficient to authenticate the document); see also CJ, § 10-204 (permitting certified court records to be received in evidence).
Many states have adopted statutes or rules of civil procedure analogous to Rule 44(a) of the Federal Rules of Civil Procedure. That rule provides that an official record may be evidenced by "a copy attested by the officer having legal custody of the record . . . and accompanied by a certificate that such officer has custody"; the certificate may be made "by a judge of a court of record . . . authenticated by the seal of the court." See, e.g., Del. Sup. Ct. R. 44; D.C. Sup. Ct. R. 44(a)(1);42 Pa. Cons. Stat. Ann. §§ 5328, 6103.[20] Some states eliminate the need for attestation by a judge. See D.C. Code Ann. § 14-501.[21]
Many states have rules of evidence, analogous or identical to Rule 902 of the Federal Rules of Evidence, that provides for self-authentication of certain public records, including court records. See, e.g., Del. R. Evid. 902.[22] See also Maryland Rule 5-902. Under this rule, a court record is authenticated if a court clerk or other authorized person certifies that the copy is a true one and, if the clerk has no seal, a public officer with a seal (e.g., a judge) certifies under seal as to the capacity of the clerk and the genuineness of the clerk's signature. In most cases, this rule imposes substantially the same requirements as28 U.S.C. § 1738.
The evident purpose of FL, § 4-508.1(b) in permitting authentication under the issuing state's standards was to eliminate technical obstacles to enforcement of a protective order by accommodating the authentication standards of the issuing state. Accordingly, we believe that any of these methods for authenticating court records in the issuing state is sufficient for purposes of FL, § 4-508.1(b).
As noted above, in certain circumstances in some states, the authentication of court records is governed by court rule rather than by statute. Despite the reference in FL, § 4-508.1(b) to a "copy of the order that is authenticated in accordance with . . . [a]statute of the issuing state" (emphasis added), we believe that an order's authenticity may be determined under an issuing state's court rules, particularly when there is no applicable statute. In general, rules of procedure have the same force and effect as a statute. State v. Cardinell, 90 Md. App. 453, 458, 601 A.2d 1123
(1992), aff'd, 335 Md. 381, 644 A.2d 11 (1994) (rules of the Court of Appeals have the same effect as laws made by the General Assembly); Taylor v. State, 20 Md. App. 404, 412, 316 A.2d 296
(1974) (rules of procedure have statutory force). In an analogous context, the Uniform Enforcement of Foreign Judgments Act requires the filing of a copy of the foreign judgment authenticated "in accordance with an act of Congress or the statutes of this state." However, in states where authentication standards appear in court rules, those standards are applied. See Lust v. Fountain of Life,Inc., 110 N.C. App. 298, 429 S.E.2d 435 (1993) (applying North Carolina rule of civil procedure to authenticate foreign judgment for purposes of Uniform Act); 44 Mont. Op. Atty. Gen. 38,1992 WL 531657 at [*]4 (August 19, 1992) (concluding that Montana rule of civil procedure established standards for authentication of foreign judgment under Uniform Act).
Moreover, the legislative history of FL, § 4-508.1 contains no indication that the General Assembly wished to distinguish those states that have set forth authentication requirements by statute from those that have done so by court rule. Rather, FL, § 4-508.1(b) appears designed simply to offer the person authenticating a protective order the option of referring to federal standards or to the standards of the issuing state. In our opinion, an individual authenticating a protective order, or a law enforcement officer assessing authenticity, may refer to an issuing state's standards concerning authentication, even if they are embodied in a court rule.
The General Assembly could avoid any possible confusion on this point by a simple amendment to FL, § 4-508.1(b), making it clear that an order may be authenticated under a court rule, as well as a statute, governing authentication in the issuing state.
C. Alternatives When Officer Lacks Copy of Order
If the officer is not presented with a copy of the order to be enforced, but is simply informed of the order, the officer may still make an arrest under FL, § 4-508.1(b)(1) if an authenticated copy of the order has been filed with the appropriate Maryland court. The officer can determine whether an authenticated copy of the order has been filed with a Maryland court by calling the court clerk's office or by consulting the MILES system.
If enforcement is necessary at a time when the clerk's office is closed, we believe that, even in the absence of verification from the court itself, an officer may reasonably conclude from a listing in the MILES system that an authenticated copy of an out-of-state protective order has been filed in a Maryland court.[23] The officer may also consult the Protection Order File maintained by the FBI's National Crime Information Center ("NCIC"), an on-line database available to law enforcement agencies. Note, The Violence Against Women Act of 1994: TheProper Federal Role in Policing Domestic Violence, 84 Cornell L. Rev. 252, 294-95 (1998). While the NCIC system may verify the existence of a protective order, it cannot assure the officer that an authenticated copy has been filed with a Maryland court, as required by FL, § 4-508.1(b) when the officer does not have an authenticated copy of the order.
If no authenticated copy of the out-of-state order is available for the officer's inspection and the officer is unable to verify that one has been filed with a Maryland court, the officer cannot make an arrest under FL, § 4-508.1(b). However, the officer may be able to provide other assistance to the complainant. For example, the officer could advise the complainant how to apply for a temporary ex parte order under the Maryland Domestic Violence Law. If the conduct alleged to have violated the out-of-state order would constitute a crime in Maryland — for example, an assault — the officer could also advise the complainant how to file criminal charges. In appropriate circumstances, if the officer has probable cause to believe that a crime has been committed in Maryland, the officer may arrest the respondent without a warrant. See Annotated Code of Maryland, Article 27, § 594B(d) (arrest for domestic abuse).
 IV Conclusion
In our opinion, an individual who violates an out-of-state protective order in Maryland may be arrested and criminally prosecuted under FL, § 4-508.1 and 4-509, if a similar violation of a Maryland protective order would be a criminal offense. The prosecutor would charge a violation of FL, § 4-509.
When a law enforcement officer is presented with a copy of an out-of-state protective order and a request for criminal enforcement of the order, the officer should first determine from the face of the order the identity of the respondent and whether the order remains effective. The officer should then assess whether there is probable cause to believe that the respondent has violated the order and, if so, whether a similar violation of a Maryland protective order could furnish the basis for a criminal prosecution. Before making an arrest, the officer should make a preliminary determination as to whether the copy of the order presented is authenticated under federal law or the law of the state in which it was issued.
Under federal law, a copy of an order that contains or is accompanied by an attestation of the clerk of the issuing court, the seal of the court (if one exists), and a certification by the court is properly authenticated. The law of the jurisdiction in which the order was issued may also permit other forms of authentication.
Finally, we recommend that the General Assembly consider amending FL, § 4-508.1, both to clarify the original intent of the Legislature and to make the Maryland Domestic Violence Law more consistent with the federal statute. In particular, FL, § 4-508.1(a) could be amended to authorize criminal enforcement of out-of-state ex parte orders under the same circumstances as exparte orders issued by Maryland courts. At the very least, FL, § 4-508.1(b) should be amended to make clear that a foreign order may be authenticated under the court rules of the issuing jurisdiction, as well as under federal and foreign state statutes.
 J. Joseph Curran, Jr. Attorney General
 Kimberly Smith Ward Assistant Attorney General
Robert N. McDonaldChief CounselOpinions Advice
[1] Other sections of VAWA provided federal funding to the states to help curtail violence against women, specified sentencing enhancements for federal crimes motivated by gender, amended the Federal Rules of Evidence to include a rape shield provision, added special provisions to the federal criminal law concerning repeat offenders and pretrial release, and established a private civil cause of action for crimes of violence motivated by gender. The private cause of action has been declared unconstitutional by the United States Court of Appeals for the Fourth Circuit, and the Supreme Court has granted certiorari on that issue. Brzonkala v. Virginia Polytechnic Institutes,169 F.3d 820 (4th Cir.), cert. granted sub nom. United States v.Morrison, 120 S. Ct. 11 (1999). The criminal provisions of VAWA have also been the subject of constitutional challenges in the lower courts, which have generally upheld the statute. Seegenerally Note, The Violence Against Women Act of 1994: TheProper Federal Role in Policing Domestic Violence, 84 Cornell L. Rev. 252, 269-83 (1998).
[2] The full faith and credit clause reads:
 Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.
U.S. Constitution, Article IV, § 1.
[3] For ease of reference, the term "state" is used throughout this opinion to refer to jurisdictions other than Maryland. The term "state" is defined in both VAWA and the State domestic violence law to include the District of Columbia, Puerto Rico, and any possession or territory of the United States. See
FL, § 1-101(e); 18 U.S.C. § 2266. In addition, the full faith and credit provisions of VAWA and the State domestic violence law also apply to protective orders issued by Indian tribes. 18 U.S.C. § 2265; FL, § 4-508.1.
[4] In particular, the statute provides:
 A protection order issued by a State or tribal court is consistent with this subsection if:
 (1) such court has jurisdiction over the parties and matter under the law of such State or Indian tribe; and
 (2) reasonable notice and opportunity to be heard is given to the person against whom the order is sought sufficient to protect that person's right to due process. In the case of ex parte orders, notice and opportunity to be heard must be provided within the time required by State or tribal law, and in any event within a reasonable time after the order is issued, sufficient to protect the respondent's due process rights.
18 U.S.C. § 2265(b). The statute contains an exception to the full faith and credit mandate for a protection order issued against the original petitioner — frequently called a "mutual protection order" — when either the respondent did not file a cross-or counter-petition or the court did not make a finding of abuse by the petitioner. 18 U.S.C. § 2265(c).
[5] In another context, the Supreme Court recently clarified that, under the full faith and credit clause, the enforcing state's obligation pertains primarily to the preclusive effect accorded to the out-of-state judgment and not to the means of enforcing the judgment:
 Full faith and credit, however, does not mean that States must adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments. Enforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the even-handed control of forum law.
Baker v. General Motors Corp., 118 S. Ct. 657, 664 (1998).
[6] A respondent who violates an ex parte or protective order may also be charged with constructive civil or criminal contempt. See Maryland Rules 15-205, 15-206. However, an officer would not have authority to arrest a respondent for contempt without a warrant or court order directing an arrest.
[7] The full faith and credit provisions of VAWA were apparently "modeled" after full faith and credit provisions of the Parental Kidnapping Prevention Act of 1980, codified at28 U.S.C. § 1738A. See S.Rep. No. 103-138 (1993) at 55-68. Section 1738A deals with the preclusive effect to be accorded child custody determinations and does not implicate criminal enforcement remedies.
[8] The Attorney General of North Dakota requires a state to enforce out-of-state orders by criminal means to the same extent as it enforces its own orders, even in the absence of authorizing state legislation. See Opinion No. 95-10,1995 WL 628864 (N.D.A.G. October 23, 1995). That opinion, however, did not address the Tenth Amendment issue.
[9] For example, under both Maryland and Delaware law, a protective order may include a provision granting a temporary award of child custody. In Maryland, such a provision may be enforced civilly, but not criminally. Under House Bill 334, as originally drafted, a petitioner with a Delaware order granting a temporary award of child custody could obtain criminal enforcement of that order, notwithstanding that an identical provision in a Maryland protective order would not be enforced criminally.
[10] The file reveals that criminal enforcement of out-of-state domestic violence orders generally was a major concern as the Legislature considered the bill. The Administrative Judge of the District Court in Baltimore City recommended passage of the legislation on the grounds that it would "enabl[e] Maryland police to enforce out-of-state protection orders in Maryland . . . and prevent an abuser who is the subject of a domestic violence order in the District of Columbia to cross the border into Prince George's County and violate [the] order withoutany sanctions from Maryland police." Letter to House Judiciary Committee from Honorable Mary Ellen T. Rinehardt (February 12, 1996) (emphasis added). In endorsing the legislation, both the State Police and an advocacy group noted that the absence of a State statute defining the arrest authority of officers with respect to out-of-state orders raised liability concerns for police officers. Department of State Police, Position on Proposed Legislation — House Bill 334 (February 12, 1996); Testimony of Maryland Network Against Domestic Violence before House Judiciary Committee (February 13, 1996).
[11] 18 U.S.C. § 2266.
[12] For example, an order issued after an opportunity for a adversary hearing is called a "civil protection order" in the District of Columbia, but is known as a "final restraining order" in New Jersey. D.C. Code Ann. § 16-1005; N.J. Stat. § 2C:25-29. In Virginia, the label "protective order" applies to an emergency orex parte domestic violence order, as well as an order issued after an opportunity for a hearing. Va. Code Ann. § 16.1-253.1,16.1-253.4, 16.1-279.1.
[13] Even without amendment of FL, § 4-508.1, a Maryland court is still required under the federal constitution and VAWA to give preclusive effect to an out-of-state ex parte order.
[14] The statute specifies the penalties as follows:
 (1) for a first offense, a fine not exceeding $1,000 or imprisonment not exceeding 90 days or both; and
 (2) for a second or subsequent offense, a fine not exceeding $2,500 or imprisonment not exceeding 1 year or both.
FL, § 4-509(a).
[15] When it issues a protective order, a court in Maryland may:
 (d)(1) order the respondent to refrain from abusing or threatening to abuse any person eligible for relief;
 (2) order the respondent to refrain from contacting, attempting to contact, or harassing any person eligible for relief;
 (3) order the respondent to refrain from entering the residence of any person eligible for relief;
 (4) where the person eligible for relief and the respondent are residing together at the time of the abuse, order the respondent to vacate the home immediately and award temporary use and possession of the home to the person eligible for relief or, in the case of alleged abuse of a child or alleged abuse of a vulnerable adult, award temporary use and possession of the home to an adult living in the home, provided that the court may not grant an order to vacate and award temporary use and possession of the home to a nonspouse person eligible for relief unless the name of the person eligible for relief appears on the lease or deed to the home or the person eligible for relief has shared the home with the respondent for a period of at least 90 days within 1 year before the filing of the petition;
 (5) order the respondent to remain away from the place of employment, school, or temporary residence of a person eligible for relief or home of other family members. . . .
FL, § 4-506(d)(1)-(5).
[16] No distinction is drawn in the statute or in its legislative history as to violations of the protective order committed in Maryland or elsewhere. However, in general, under the common law, a State may only exercise jurisdiction over a crime committed within the State. Bowen v. State, 206 Md. 368,375, 111 A.2d 844 (1955) ("an offense against the laws of the State of Maryland is punishable only when committed within its territory"). The Maryland courts have also asserted jurisdiction over criminal conduct when the charge arises out of conduct that has an effect in Maryland or arises out of the defendant's legal obligations in the State. See Wright v. State, 339 Md. 399, 404,603 A.2d 590 (1995) (court had jurisdiction over theft charge when defendant had "duty to account" for property in Maryland); Trindlev. State, 326 Md. 25, 602 A.2d 1232 (1992) (prosecution for child abduction based on failure to return children to mother in Maryland); Pennington v. State, 308 Md. 727, 730, 521 A.2d 1216
(1987) (assault committed in District of Columbia to prevent victim from testifying in Maryland could be prosecuted as obstruction of justice in Maryland). In any event, the arrest and prosecution of a respondent in Maryland for violation of an out-of-state order must be based on conduct that bears some relation to Maryland.
[17] Of course, such a provision of a Virginia order may still be enforceable by the petitioner in a civil action in a Maryland court which would be obligated to accord full faith and credit to the Virginia order under VAWA.
[18] An out-of-state protective order filed in Maryland, like any other foreign judgment, is subject to limited attack.Dixon v. Keeneland Assoc., Inc., 91 Md. App. 308, 311,604 A.2d 502, cert. denied, 327 Md. 625, 612 A.2d 256 (1992) (in a suit to enforce the judgment of another state, the jurisdiction of the foreign court is open to judicial inquiry). At least one state seeks to eliminate this issue, so as to facilitate enforcement of its protective orders in other jurisdictions. Protective orders issued pursuant to the Kentucky statute must include a statement certifying that the issuing court has jurisdiction over the parties and the matter, and that reasonable notice and opportunity to be heard has been given to the person against whom the order is entered sufficient to protect that person's right to due process. Ky. Rev. Stat. Ann. § 403.751 (Baldwin 1998).
[19] If the officer arrests a respondent on the basis of a protective order that is later determined to be invalid, various immunity provisions may protect the officer from civil liability. A state law enforcement officer would be immune from suit or judgment for money damages if the officer acted without malice or gross negligence. CJ, § 5-522 (b). A local law enforcement officer would be immune from execution of a judgment unless the officer acted with actual malice. CJ, § 5-302(b). Cf. Md. Ann. Code, Article 27, § 798; CJ, § 5-610 (law enforcement officer who accompanies alleged victim of domestic abuse to family home is immune from civil liability if officer acts in good faith and in a reasonable manner); Williams v. Mayor City Council,128 Md. App. 1, 736 A.2d 1084 (1999). See generally 84 Opinions of theAttorney General___ (1999) [Opinion No. 99-012 (August 12, 1999)], slip op. at pp. 17-19 (discussing official immunity of officers enforcing protective orders).
[20] The Pennsylvania statute concerning authentication of domestic court records provides that "an official record kept within this Commonwealth by any court, district justice or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of his office. . . ." 42 Pa. Cons. Stat. Ann. § 6103.
[21] That statute provides that "an exemplification of a record under the hand of the keeper of the record, and the seal of the court or office where the record is made, is good and sufficient evidence to prove a record made or entered in any State, territory, commonwealth or possession of the United States. The certificate of the person purporting to be the keeper of the record, accompanied by the seal, is prima facie evidence of the fact." D.C. Code Ann., § 14-501.
[22] For example, Rule 902 of the Delaware Rules of Evidence sets forth the following requirements for self-authentication of certain documents:
 Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
 (1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer or agency thereof, and a signature purporting to be an attestation or execution.
 (2) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in his official capacity of an officer or employee of an entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
* * *
 (4) Certified Copies of Public Records. A copy of an official record, report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with subdivision (1), (2) or (3) of this rule or complying with any law of the United States or of this State.
A compilation of state analogs to Rule 902 of the Federal Rules of Evidence may be found in 6 Weinstein's Federal Evidence, Table ofState and Military Adaptations, T-163 through T-167 (Rel. 63 — 11/98).
[23] On the other hand, the absence of any reference to an order in the MILES system would not contradict the authenticity of a copy of the order if that copy were otherwise authenticated, because the MILES system does not necessarily capture all protective orders. According to news reports, some law enforcement agencies currently lack personnel or resources to post all protective orders on the MILES system on a timely basis. SeeSheriffs Lag on Restraint Orders, Baltimore Sun, Nov. 13, 1999, at p.B1.
 *Page 114